**\*NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

|  |  |  |
|---|---|---|
| | : | |
| JOSE MARTE, | : | |
| | : | Civil Action No. 13-7259 (SDW) |
| Petitioner, | : | |
| | : | |
| v. | : | **OPINION** |
| | : | |
| UNITED STATES OF AMERICA, | : | |
| | : | |
| Respondent. | : | June 10, 2015 |
| | : | |

**WIGENTON**, District Judge:

Presently before the Court is the motion of Jose Marte ("Petitioner") to vacate, set aside, or correct his sentence brought pursuant to 28 U.S.C. § 2255.   (ECF No. 1, 4, 5, 6.)   Respondent, United States of America ("Respondent" or "Government"), filed a response (ECF No. 16), to which Petitioner replied (ECF No. 17).   For the following reasons, the Court denies the motion and no certificate of appealability shall issue.[1]

## I.  BACKGROUND

Prior to the criminal activity which was the subject of his underlying conviction, Petitioner, Jose Marte, was a legal permanent resident of the United States.   (Document 1 attached to ECF no. 16 at 29-30).[2]   Although Petitioner is apparently married to a United States Citizen and has

---

[1]  Because this Court is denying Petitioner's § 2255 motion on the merits, Petitioner's outstanding Motions to Expedite (ECF No. 12, 20), for the Appointment of Counsel (ECF No. 19), and for Summary Judgment (ECF No. 13) will also be denied as moot.

[2]  Document 1 attached to ECF No. 16 (the Government's response) is actually made up of several smaller documents with differing page number schemes.   The page numbers referenced

several children who are apparently citizens of the United States, Petitioner had not, prior to his conviction, sought citizenship on his own behalf.   (*Id.*).

On or about October 18, 2011, Petitioner met with a confidential source and provided that individual with "four sample bags of heroin in anticipation of selling a larger quantity of heroin" to him on the following day.   (Plea Transcript attached to ECF No. 16 at 11).   The following day, Petitioner again met with the confidential source "for the purpose of selling approximately 60 bricks of heroin" to the source.   (*Id.* at 11-12).   At the time, Petitioner knew that the "bricks" contained heroin and met with the source specifically for the purpose of providing the source with the heroin so the source could resell it to others.   (*Id.* at 12).   Based on these actions, Petitioner was arrested and initially charged by way of complaint with possession with intent to distribute heroin in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(B) on October 20, 2011.   (*See* Complaint, Criminal Action No. 12-667 at ECF No. 1).   Following testing which determined the quantity of heroin possessed by Petitioner to be 79.31 grams, Petitioner's charges were amended by way of a one count information which charged petitioner with knowing and intentional distribution and possession with the intent to distribute a quantity of heroin in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(C) as well as 18 U.S.C. § 2.   (Information, Criminal Action No. 12-667 at ECF No. 16).

Petitioner thereafter entered into a plea agreement with the Government in July of 2012. (Document 1 attached to ECF No. 16 at 17-25).   Pursuant to the agreement, Petitioner was to plead guilty to the sole charge raised in the one-count information in exchange for certain

---

herein regarding Document 1 are therefore the page numbers assigned by the Clerk of the Court for Document 1 ranging from one to thirty-two.

sentencing stipulations specified in the agreement and for the government's agreement to pursue no further charges against him relating to the heroin distribution.   (*Id.*).   The agreement, which Petitioner and his counsel signed on July 13, 2012, also contained the following statement regarding the immigration consequences of Petitioner's proposed guilty plea:

> [t]he [Petitioner] understands that, if he is not a citizen of the United States, his guilty plea to the charged offense(s) will likely result in his being subject to immigration proceedings and removed from the United States by making him deportable, excludable, or inadmissible, or ending his naturalization.   The [Petitioner] understands that the immigration consequences of this plea will be imposed in a separate proceeding before the immigration authorities.   The [Petitioner] wants and agrees to plead guilty to the charged offense(s) regardless of any immigration consequences of this plea, even if this plea will cause his removal from the United States.   The [Petitioner] understands that he is bound by his guilty plea.   Accordingly, [Petitioner] waives any and all challenges to his guilty plea and to his sentence based on any immigration consequences, and agrees not to seek to withdraw his guilty plea, or to file a direct appeal or collateral attack challenging his guilty plea, conviction, or sentence, based on any immigration consequences of his guilty plea.

(*Id.* at 20, 22).   In addition to stipulations regarding the offense level under the sentencing guidelines, the plea agreement also contained the following restriction on any sentencing arguments to be made by Petitioner:   "[t]he parties agree not to seek or argue for any upward or downward departure, adjustment or variance not set forth herein."   (*Id.* at 24).

On October 3, 2012, Petitioner filed with this Court an application, under Rule 11, for permission to enter a plea of guilty.   (Plea Application, Criminal Action No. 12-667 at ECF No. 19).   In that application, Petitioner made the following certification: "[m]y lawyer has explained to me, and I understand, that if I am not a citizen of the United States, my plea of GUILTY to the charged offense(s) [WILL LIKELY] result in my being subject to separate immigration law

proceedings to have me removed from the United States by making me deportable, excludable, or inadmissible, or ending my naturalization. "   (*Id.* at ¶ 34).   Petitioner also certified that he "believe[d] that [his] lawyer ha[d] done all that anyone could do to counsel and assist [him]."   (*Id.* at ¶ 42).   Petitioner also expressed his satisfaction with his attorney's representation with the following statement: "I AM SATISFIED WITH THE ADVICE AND HELP MY LAWYER HAS GIVEN ME."   (*Id.*).

This Court thereafter held a plea hearing.   During the hearing, this Court first established that Petitioner could read, write, and understand English, and that his understanding of the proceedings was not otherwise impaired.   (Plea Transcript attached to ECF No. 16 at 3). Petitioner then stated that he had received a "complete opportunity" to speak with his attorney, and that they had specifically spoken about his right to plead guilty or instead go to trial.   (*Id.*). Petitioner also stated that his attorney had answered all of his questions.   (*Id.* at 3-4).   Petitioner then agreed that he had voluntarily waived his right to indictment after discussing the matter with his counsel.   (*Id.* at 4).

This Court then turned to Petitioner's application to plead guilty.   As to the application, Petitioner agreed that he had read the document and that his attorney had gone over the application with him.   (*Id.* at 5).   Petitioner stated that his attorney had explained all of its contents to him, and that any questions he had regarding the application had been answered to his satisfaction.   (*Id.* at 5).   After establishing that Petitioner had signed and submitted the application, this Court explained to Petitioner that "once [he] enter[ed] this plea, [he couldn't] take it back or retract it because [he didn't] like or agree with [the Court's] sentence[ing]."   (*Id.* at 6).   After establishing that Petitioner was giving up his trial rights, this Court addressed the plea agreement.   (*Id.* at 6-

7).   During the discussion of the agreement, Petitioner stated that he had gone over the agreement with his counsel, that counsel had explained the document to him in detail, and that counsel had answered any and all questions to Petitioner's satisfaction.   (*Id.* at 7).   Petitioner then stated that he had signed the agreement on July 13, 2012.   (*Id.* at 7-8).   Petitioner also stated that he understood the appellate rights that he had waived in the agreement, and the stipulations as to the Guidelines range he had made.   (*Id.* at 8-9).   Petitioner also stated that he understood that sentencing remained in this Court's discretion.   (*Id.* at 9).

This Court then specifically addressed the immigration consequences Petitioner would face in the following colloquy:

> THE COURT:   Alright.   Now, [defense counsel], are there any immigration consequences that relate to [Petitioner]?
>
> [Defense Counsel]:   Yes.   This is a situation where I believe that when he is convicted and sentenced, he should be deport – he's subject to deportation.   And he likely will be deported, unless there's something extraordinary that I don't know at this point.
>
> THE COURT:   Okay.   Alright.   So in that regard, [Petitioner], if you look on page 4 [of the plea agreement], right under that same section of waiver of appeal, there's a section entitled: Immigration consequence[s].   Do you see that?
>
> [Petitioner]:   Yes.
>
> THE COURT:   So you understand that if you are not a citizen of the United States, your guilty plea to the charged offense will likely result in your being subject to immigration proceedings and therefore removed from the United States.   You understand that?
>
> [Petitioner]:   Yes, I understand.
>
> THE COURT:   Okay.   And have you consulted with your attorney about that?
>
> [Petitioner]:   Yes, I did.

5

> THE COURT:   Alright.   And he's answered all of your questions?
>
> [Petitioner]:   Yes.
>
> THE COURT:   Alright.   So do you understand once you've entered this plea, as I've already said, you can't take it back later and say, "I didn't know I was going to have immigration consequences," because that is clearly a part of this plea agreement. You do understand that?
>
> [Petitioner]:   Yes.

(*Id.* at 10-11).   Based on Petitioner's asserted factual basis put on the record thereafter, as well as the Government's assertion that it could prove that the heroin Petitioner possessed weighed approximately 79 grams, this Court accepted Petitioner's plea of guilty.   (*Id.* at 11-14).   On January 24, 2013, based in part on Petitioner's arguments in which he acknowledged that he would almost certainly be deported, this Court ultimately sentenced Petitioner to the bottom of the appropriate guidelines range:   twenty four months' imprisonment and three years' supervised release.[3]   (*See* Petitioner's sentencing memo, document 1 attached to ECF No. 16 at 30-32; Criminal Action No. 12-667 at ECF No. 22).

## II.  DISCUSSION

---

[3] Counsel for Petitioner, who was constrained by the plea argument, did not argue for a downward departure, but instead argued for the minimum sentence recommended by the PSR's Sentencing Guidelines calculation.   (*See* Petitioner's sentencing memo, document 1 attached to ECF No. 16 at 30-32).

**A.   Legal Standard**

A prisoner in federal custody may file a motion pursuant to 28 U.S.C. § 2255 challenging the validity of his sentence.   Section 2255 provides, in relevant part, as follows:

> A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such a sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

28 U.S.C. § 2255.

Unless the moving party claims a jurisdictional defect or a Constitutional violation, in order to be entitled to relief the moving party must show that an alleged error of law or fact constitutes "a fundamental defect which inherently results in a complete miscarriage of justice, (or) an omission inconsistent with the rudimentary demands of fair procedure."   *United States v. Horsley*, 599 F.2d 1265, 1268 (3d Cir.) (quoting *Hill v. United States*, 368 U.S. 424, 429 (1962)), *cert. denied* 444 U.S. 865 (1979); *see also Morelli v. United States*, 285 F. Supp. 2d 454, 458-59 (D.N.J. 2003).

**B.   Analysis**

**1.   An evidentiary hearing is not required**

The habeas statute requires an evidentiary hearing "unless the motion and files and records of the case conclusively show that the prisoner is entitled to no relief."   28 U.S.C. §2255(b); *United States v. Booth,* 432 F.3d 542, 545 (3d Cir. 2005); *United States v. Day*, 969 F.2d 39, 41-42 (3d Cir. 1992).   Where the record, as supplemented by the trial judge's personal knowledge,

conclusively negates the factual predicates asserted by a petitioner or indicate that petitioner is not entitled to relief as a matter of law, no hearing is required.  *Government of Virgin Islands v. Nicholas*, 759 F.2d 1073, 1075 (3d Cir. 1985); *see also United States v. Tuyen Quang Pham*, 587 F. App'x 6, 8 (3d Cir. 2014); *Booth*, 432 F.3d at 546 (evidentiary hearing only necessary where a petitioner's claims are not conclusively resolved by the record).   For the reasons set forth below, Petitioner's claims are without merit, and therefore the record establishes that Petitioner is not entitled to relief as a matter of law.   An evidentiary hearing is therefore not required.

### 2.  Ineffective Assistance of Counsel

Petitioner argues that his trial counsel was constitutionally ineffective.   Claims of ineffective assistance of counsel under the Sixth Amendment are governed by the two-prong test set forth by the Court in *Strickland v. Washington*, 466 U.S. 668 (1984).   Under *Strickland*, a petitioner must first show that "counsel's performance was deficient.   This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment."   *Id.* at 687*; see also United States v. Shedrick*, 493 F.3d 292, 299 (3d Cir. 2007).   Second, a petitioner must show that counsel's deficient performance prejudiced his defense such that counsel's errors were so serious as to "deprive [the petitioner] of a fair trial . . . whose result is reliable."   *Strickland*, 466 U.S. at 687; *Shedrick*, 493 F.3d at 299.

In determining whether counsel was deficient, the "proper standard for attorney performance is that of 'reasonably effective assistance.'"   *Jacobs v. Horn*, 395 F.3d 92, 102 (3d Cir. 2005).   Thus, a petitioner must show that his counsel's representation "fell below an objective standard of reasonableness" under the circumstances.   *Id.*   Reasonableness in this context is

determined based on the facts of the petitioner's particular case, viewed as of the time of conduct alleged to have been ineffective. *Id.*   Judicial scrutiny of counsel's performance "must be highly deferential . . . a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689.   Even if Petitioner shows that counsel was deficient, he must still affirmatively demonstrate that counsel's deficiencies resulted in prejudice to his defense. *Id.* at 692-93.   "It is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding." *Id.* at 693.   Petitioner must show that "there is a reasonable probability, but for counsel's unprofessional errors, the result of the proceeding would have been different.   A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694; *see also Shedrick*, 493 F.3d at 299.

Although Petitioner characterizes his motion as raising three separate claims for ineffective assistance of counsel, Petitioner in effect raises a single, albeit continuing, claim:   that counsel failed to properly and fully inform him of the immigration consequences attendant to his guilty plea, and therefore prevented Petitioner from seeking an alternate plea and sentence which would not have possessed the immigration consequences that Petitioner now faces as a result of his conviction.   "Before deciding whether to plead guilty, a defendant is entitled to 'the effective assistance of competent counsel.'" *Padilla v. Kentucky*, 559 U.S. 356, 364 (2010) (quoting *McMann v. Richardson*, 397 U.S. 759, 771 (1970); *Strickland*, 466 U.S. at 686).   Effective assistance in the guilty plea context requires that counsel provide a criminal defendant with sufficient information "to make a reasonably informed decision whether to accept a plea offer." *Shotts v. Wetzel*, 724 F.3d 364, 376 (3d Cir. 2013), *cert. denied*, --- U.S. ---, 134 S. Ct. 1340 (2014).

Because deportation is a serious and severe potential consequence of certain convictions, counsel, in order to provide effective assistance, is required to inform his client whether he faces a risk of deportation when pleading guilty. *Padilla*, 559 U.S. at 373-74. To satisfy this requirement, counsel must at the least inform his client that a guilty plea "may carry a risk of adverse immigration consequences." *Id.* at 369. Where those immigration consequences under the relevant statutes are "succinct, clear, and explicit," however, counsel's duty is to "give correct advice" as to the immigration consequences likely to result from a guilty plea. *Id.*

Petitioner asserts that his counsel was ineffective for misadvising him that a sentence of less than one year under the charged statute would still render Petitioner subject to deportation proceedings, that counsel was defective in failing to renegotiate Petitioner's plea deal to an offense which would carry a sentence below one year, and that counsel was ineffective as he failed to argue for a sentence of less than one year at sentencing. All of Petitioner's claims are predicated under the assumption that Petitioner would not have been subject to deportation had he been sentenced to less than one year in prison for his offense. Petitioner, however, is mistaken.

Under immigration law, even legal permanent residents are subject to deportation where they are convicted of an "aggravated felony." 8 U.S.C. § 1227(a)(2)(A)(iii). The term "aggravated felony" under the statute includes "illicit trafficking in a controlled substance (as defined in section 802 of Title 21), including a drug trafficking crime (as defined in section 924(c) of Title 18)." 8 U.S.C. § 1101(a)(43)(B). Under 18 U.S.C. § 924(c)(2), a "drug trafficking crime" means any felony punishable under the Controlled Substance Act (21 U.S.C. 801 et seq.), the Controlled Substances Import and Export Act (21 U.S.C. 951 et seq.) or chapter 705 of title 46." With the exception of certain cases involving small amounts of marijuana distributed for no

10

remuneration, convictions under 21 U.S.C. § 841, such as Petitioner's conviction under 21 U.S.C. § 841(b)(1) and (b)(1)(C), are considered felonies as they are punishable by more than one year in prison.  *See, e.g., Rodriguez v. Attorney Gen. of United States*, 517 F. App'x 82, 84-85 (3d Cir. 2013).   As Petitioner was convicted of a violation which is a felony under the Controlled Substance Act, he was convicted of an aggravated felony, and is thus subject to deportation under 8 U.S.C. § 1227(a)(2)(A)(iii).   Petitioner's claims are therefore based on a false factual and legal predicate: that he would not be deportable had he been sentenced to less than one year's imprisonment.

Petitioner first asserts counsel was ineffective for telling him that "if he was sentenced to 5 or 7 months" for the offense to which he pled guilty, he would still be subject to deportation proceedings.  (*See* ECF No. 5 at 2).   Petitioner asserts that in so stating, counsel was ineffective both in giving "incorrect" advice, and for failing to stay abreast of changes in immigration law. As set out above, however, Petitioner's basic assertion is flawed: counsel's advice was correct, Petitioner's guilty plea in this matter rendered him deportable regardless of the actual sentence imposed.   As such, counsel was not ineffective for providing Petitioner with correct advice regarding the immigration consequences of his plea.

To the extent that Petitioner claims he was not provided with information regarding the immigration consequences of his guilty plea, such a claim is directly contradicted by the record. Petitioner was clearly informed that his conviction rendered him subject to deportation in the plea agreement, in his Rule 11 application, and by this Court during the plea colloquy.   Indeed, during the colloquy Petitioner informed the Court that he had discussed the immigration consequences with counsel, understood them, and that counsel had answered any and all questions to his

satisfaction.   As the advice Petitioner was given and about which he now complains appears to have been accurate in so much as it reflects the statutes and case law previously discussed, Petitioner can therefore not claim that counsel was deficient in providing that advice.

Petitioner next asserts that counsel was ineffective for renegotiating the plea deal so that Petitioner could plead guilty to an offense and sentence which would not render him subject to deportation.   Petitioner, however, provides nothing more than his own assertion that a better plea agreement to an alternative offense could have been reached.   He does not assert that the Government did offer an alternative agreement, and the Government in its response specifically states that it "did not, and would not offer a plea to a lesser charge. The government charged the most appropriate and readily provable offense."   (ECF no. 16 at 13).   The "failure to obtain a [better] plea bargain is not evidence of ineffective assistance of counsel when the record does not contain evidence that one might have been offered."   *Eisemann v. Herbert*, 401 F.3d 102, 109 (2d Cir. 2005); *see also Burger v. Kemp*, 483 U.S. 776, 785-86 (1987) (where there is no evidence in the record that a prosecutor "would have been receptive to a plea bargain," no *Strickland* prejudice results from the failure to secure that bargain).   The record here contains no more than Petitioner's base assertions that a better deal or alternative plea could have been procured, which is patently insufficient to establish that counsel was ineffective.   *See Palmer v. Hendricks*, 592 F.3d 386, 395 (3d Cir. 2010) (where a "petition contains no factual matter regarding *Strickland's* prejudice prong, and [only provides] . . . unadorned legal conclusion[s] . . . without supporting factual allegations," the petition is insufficient to warrant even an evidentiary hearing, let alone habeas relief); *accord United States v. Thomas*, 221 F.3d 430, 437 (3d Cir. 2000); *United States v. Dawson*, 857 F.2d 923, 928 (3d Cir. 1988).   There is no evidence in the record that an alternative plea was available,

and given the strong evidence of Petitioner's guilt, garnered from his sale of heroin to the Government's confidential source, there is no reason to believe that the Government would have been amenable to such a deal.   As such, Petitioner cannot show on this record that his counsel was ineffective for failing to negotiate a "better" plea deal.

   Petitioner's final argument is that counsel was ineffective for failing to argue for a sentence of less than one year during sentencing.   Putting aside the fact that Petitioner's argument rests on the inaccurate assumption that a sentence of less than one year would not have resulted in immigration consequences, this argument, too, is refuted by the record.   At sentencing, counsel argued persuasively that, given Petitioner's circumstances, this Court should sentence Petitioner to the lowest sentence possible within the recommended guideline range, which this Court ultimately did.   Based on the plea agreement which Petitioner signed, counsel was specifically prevented from arguing for any downward departure or variance outside of the recommended guidelines range.   (Document 1 attached to ECF No. 16 at 24).   Had counsel made the arguments Petitioner suggests, he would have violated the plea agreement and placed the benefits Petitioner received therefrom at risk.   Petitioner's argument that counsel should have argued for a sentence below the recommended guidelines range is therefore, at best, disingenuous.   Counsel argued persuasively on Petitioner's behalf to the fullest extent permitted him by the plea agreement.   As such, this Court rejects Petitioner's argument that he received ineffective assistance of counsel during sentencing as counsel was not deficient.   Because all of Petitioner's ineffective assistance claims are without merit, this Court will deny Petitioner's § 2255 motion.[4]

---

[4] To the extent that Petitioner raises a new argument in his reply brief, specifically that he was "misled by the information" and therefore did not know that his charge was not "properly bought under Title 21," that claim has not been properly raised.   Putting aside the dubious merit of such

### III.   CERTIFICATE OF APPEALABILITY

Pursuant to 28 U.S.C. §2253(c), Petitioner may not appeal from a final order in a proceeding under § 2255 unless Petitioner has "made a substantial showing of the denial of a constitutional right."   "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude that the issues presented here are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003).   As Petitioner's ineffective assistance claims are without merit, he has failed to make a substantial showing that he was denied a constitutional right, and no certificate of appealability shall therefore issue.


### IV. CONCLUSION

For the reasons stated above, petitioner's motion is DENIED, and no certificate of appealability shall issue.   An appropriate order follows.

s/ *Susan D. Wigenton*

**SUSAN D. WIGENTON**
**UNITED STATES DISTRICT JUDGE**

---

an assertion where a Petitioner sold a confidential source nearly eighty grams of heroin which would clearly violate the statute, this Court need not address this argument as Petitioner raised it for the first time in his reply brief.   *See Thompson v. United States*, No. 12-1312, 2015 WL 1344793, at *6 n. 9 (D.N.J. March 23, 2015) (courts need not consider habeas arguments raised for the first time in a reply brief); *Soto v. United States*, No. 04-2108, 2005 WL 3078177, at *6 (D.N.J. Nov. 16, 2005); *Rodriguez v. United States*, No. 04-158, 2005 WL 2007033, at *9 n. 7 (D.N.J. Aug. 22, 2005).

14